71 So.3d 786 (2011)
CHEMROCK CORPORATION, Petitioner,
v.
TAMPA ELECTRIC COMPANY, etc., d/b/a TECO Peoples Gas Company, Respondent.
No. SC09-2263.
Supreme Court of Florida.
June 30, 2011.
Rehearing Denied September 22, 2011.
*787 Jamie P. Yadgaroff, Bala Cynwyd, PA, for Petitioner.
Pedro F. Bajo, Jr. and Anthony J. Cuva of Bajo Cuva, P.A., Tampa, FL, for Respondent.
LABARGA, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Chemrock Corporation v. Tampa Electric Co., 23 So.3d 759 (Fla. 1st DCA 2009). The district court certified that its decision is in direct conflict with the decisions of the Second District Court of Appeal in Pagan v. Facilicorp, Inc., 989 So.2d 21 (Fla. 2d DCA 2008), and Edwards v. City of St. Petersburg, 961 So.2d 1048 (Fla. 2d DCA 2007), and the Third District Court of Appeal in Padron v. Alonso, 970 So.2d 399 (Fla. 3d DCA 2007). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
The conflict issue in this case involves the proper interpretation of Florida Rule of Civil Procedure 1.420(e), which provides for involuntary dismissal of court actions for lack of prosecution. As we explain below, the filing made by Chemrock during the sixty-day grace period set forth in rule 1.420(e) met the rule's requirement for record activity, thus precluding dismissal for lack of prosecution. Therefore, we quash the decision of the First District in Chemrock and approve the conflict cases certified by the First District below.

FACTS AND PROCEDURAL BACKGROUND
In May 2002, Chemrock, a Delaware company that processes perlite for horticultural and construction use in its Jacksonville, Florida, plant, sued Tampa Electric Company d/b/a TECO Peoples Gas Company (hereafter "Tampa Electric") in circuit court in Duval County. The complaint alleged several counts for damages based on the claim that natural gas being supplied to Chemrock was contaminated with debris that caused damage to Chemrock's furnaces. The case was set for a July 2003 trial, but was continued after the parties filed a joint motion for continuance. The order of continuance stated that the case would be reset for trial upon proper motion. Discovery and trial preparation were undertaken, during which time the parties engaged in numerous disagreements concerning discovery and other matters. Neither party filed a motion to have the case reset for trial.
On December 27, 2006, Tampa Electric filed a notice of lack of prosecution under Florida Rule of Civil Procedure 1.420(e), alleging that there had been no record activity for the prior ten months. Rule 1.420(e) provides as follows:
(e) Failure to Prosecute. In all actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 10 months, and no order staying the action has been *788 issued nor stipulation for stay approved by the court, any interested person, whether a party to the action or not, the court, or the clerk of the court may serve notice to all parties that no such activity has occurred. If no such record activity has occurred within the 10 months immediately preceding the service of such notice, and no record activity occurs within the 60 days immediately following the service of such notice, and if no stay was issued or approved prior to the expiration of such 60-day period, the action shall be dismissed by the court on its own motion or on the motion of any interested person, whether a party to the action or not, after reasonable notice to the parties, unless a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending. Mere inaction for a period of less than 1 year shall not be sufficient cause for dismissal for failure to prosecute.
Fla. R. Civ. P. 1.420(e). This version of rule 1.420(e) was adopted in 2005 and became effective January 1, 2006, see In re Amendments to the Florida Rules of Civil Procedure (Two Year Cycle), 917 So.2d 176, 177 (Fla.2005), and has not since been amended. Prior to the 2006 amendment, the rule provided that actions in which there is no record activity by filing of pleadings, order of court, or otherwise for a period of one year shall be dismissed unless a stipulation staying the action is approved by the court, a stay order has been filed, or a party shows good cause in writing at least five days before a hearing on the motion alleging why the action should remain pending. The prior version of the rule did not contain the sixty-day grace period following the notice of lack of prosecution in which the party could avoid dismissal by engaging in record activity.
In February 2007, during the sixty-day grace period provided by the rule, Chemrock filed a Motion in Opposition to Motion for Dismissal for Lack of Prosecution and Showing Good Cause Why Action Should Remain Pending. The court docket reflects no subsequent record activity until June 24, 2008, when Tampa Electric filed its motion to dismiss for lack of prosecution. Chemrock subsequently filed an affidavit in support of its motion asserting good cause to allow the case to remain pending.
A hearing was held on August 26, 2008, after which the trial court dismissed the case for lack of prosecution, although no transcript of the hearing appears in the record of this case. Chemrock timely appealed to the First District, which affirmed the trial court's dismissal of the action. The district court explained:
Prior to January 1, 2006, Rule 1.420(e) allowed a case to be dismissed for lack of prosecution when there was no "record activity" during the preceding twelve months. Under this version of the Rule, the Supreme Court established a bright-line test for "record activity," defining it as any document filed in the record. See Wilson v. Salamon, 923 So.2d 363, 368 (Fla.2005). In so doing, Wilson receded from precedent that attempted to differentiate between active "record activity"activity designed to hasten the case to a conclusion on the meritsand passive "record activity"activity which had no effect on the case's progress. Id. at 369; see also Diamond Drywall Sys., Inc. v. Mashan Contractors, Inc., 943 So.2d 267, 269 (Fla. 3d DCA 2006). Therefore, at the time of Wilson, the only relevant consideration before a case could be dismissed under the Rule was the passage of time.
Shortly after Wilson, the Supreme Court amended Rule 1.420(e) to its current version, incorporating two significant changes. First, it shortened the period of time that must elapse before *789 the moving party can take action from twelve months to ten months. Second, it created a sixty-day grace period during which the nonmoving party had various options to avoid dismissal. These changes widened the scope of the Rule, permitting a trial court to consider more than just the passage of time before dismissing a case for lack of prosecution.
....
The Second and Third districts have extended Wilson's broad definition to any grace period filings. According to this interpretation, which Chemrock urges us to adopt, any filing during the sixty-day period, regardless of merit, ipso facto averts dismissal. This interpretation renders any role the trial court may play, any equitable arguments the moving party may be able to raise, and the facts of the case irrelevant. It is contrary to the Committee's intent and divests the Rule of all meaning.
Chemrock, 23 So.3d at 760-61 (citations omitted). The First District concluded:
If the current version of Rule 1.420(e) is to have any role in civil litigation, Chemrock's filing during the grace period cannot be found sufficient to avoid dismissal. Accordingly, the trial court properly dismissed the case for lack of prosecution. We find the Wilson definition of "record activity" applicable to the ten months before the notice of lack of prosecution may be filed, but inapplicable to the sixty-day grace period following service of the notice.
Id. at 763. Based on its interpretation of the requirements of rule 1.420(e) as amended effective January 1, 2006, the First District affirmed dismissal of the case for lack of prosecution, concluding that Chemrock's filing during the sixty-day grace period was not an attempt to move the case toward conclusion on the merits. Id. Because the First District recognized that at least three other district court decisions have applied Wilson's bright-line definition of record activity to the filing required during the sixty-day grace period under rule 1.420(e), it certified express and direct conflict with those casesPagan v. Facilicorp, Inc., 989 So.2d 21 (Fla. 2d DCA 2008); Padron v. Alonso, 970 So.2d 399 (Fla. 3d DCA 2007); and Edwards v. City of St. Petersburg, 961 So.2d 1048 (Fla. 2d DCA 2007). Chemrock, 23 So.3d at 763. We agree that the holding in Chemrock expressly and directly conflicts with the holding in those cases on the question of whether the Wilson bright-line rule applies to the sixty-day grace period. Thus, we turn next to a discussion of the cases cited for conflict.

The Conflict Cases
In Pagan, the Second District interpreted rule 1.420(e) under the "bright-line" test announced in Wilson, and held that a motion to stay filed by the plaintiff during the sixty-day grace period met the rule's requirement for record activity. Pagan, 989 So.2d at 23. In so holding in Pagan, the Second District relied on its decision in Edwards, which also involved amended rule 1.420(e). 989 So.2d at 23. In Edwards, the Second District relied on the holding and rationale set forth in Wilson, noting that Wilson had expressly receded from precedent that required trial courts to attempt to characterize the quality of the record activity as passive or active. Edwards, 961 So.2d at 1049-50. The Second District held that the bright-line rule announced in Wilson, which furthered the salutary purposes of promoting resolution of cases on the merits and decreasing litigation over the rule's meaning, applied to the amended rule. Edwards, 961 So.2d at 1049 (citing Metro. Dade Cnty. v. Hall, 784 So.2d 1087, 1090 (Fla.2001)).
Finally, in Padron, the last case cited for conflict by the First District below, the Third District also construed rule 1.420(e) *790 to be governed by the Wilson bright-line rule, allowing the filing of any document during the sixty-day grace period to preclude dismissal. Padron, 970 So.2d at 401. Based on the express and direct conflict between these decisions and the First District's decision in the present case, this Court must answer the question of whether the bright-line test for record activity set forth in Wilson applies to record activity that occurs under rule 1.420(e), including record activity during the sixty-day grace period provided by the rule.

ANALYSIS
Our task is to explain whether, in amending rule 1.420(e), we intended that our decision in Wilson v. Salamon, 923 So.2d 363 (Fla.2005), and the construction placed on the prior rule in that case, would continue to apply to the 2006 version of the rule. As we explained in Strax Rejuvenation & Aesthetics Institute, Inc. v. Shield, 49 So.3d 741 (Fla.2010), we apply a de novo standard of review when the construction of a procedural rule is at issue. Id. at 742 (citing Saia Motor Freight Line, Inc. v. Reid, 930 So.2d 598, 599 (Fla.2006)).
The First District concluded that the Wilson bright-line interpretation of the prior ruleunder which any filing of record during the applicable time frame is sufficient to preclude dismissalwould continue to apply to the amended rule, but only for the ten-month period preceding the filing of a notice of lack of prosecution. The district court opined that the amendments to the rule indicated that a different test would apply in evaluating record activity that occurs during the sixty-day grace period following the notice. The First District is correct that in interpreting the prior rule in Wilson, we held that any type of filing during the twelve-month period constituted record activity precluding dismissal for lack of prosecution. See Wilson, 923 So.2d at 363-64. In so holding, we were attempting to interpret the rule under its plain meaning in order to eliminate the confusion and difficulty that had arisen in earlier cases concerning what type of record activity would be sufficient to avert dismissal for failure to prosecute. Id. at 368-69. We explained in Wilson that the earliest version of the rule was based on an existing statute which had been interpreted in Gulf Appliance Distributors, Inc. v. Long, 53 So.2d 706 (Fla. 1951), to require that in order to preclude dismissal, the record activity must be an active measure calculated to hasten the suit to judgment. Wilson, 923 So.2d at 366. We explained:
This confusion in turn can be traced at least in part to language contained in our 1951 opinion in Gulf Appliance Distributors, Inc. v. Long, 53 So.2d 706 (Fla.1951), in which we interpreted the meaning of the statutory predecessor to rule 1.420(e). Id. at 707. In Gulf Appliance, we addressed whether an order allowing the withdrawal and substitution of counsel constituted sufficient activity to preclude dismissal for failure to prosecute under section 45.19(1), Florida Statutes (1949). See 53 So.2d at 707. In holding that the entry of such an order was not sufficient, we stated that the requirement is "something more than a mere passive effort to keep the suit on the docket of the court; it means some active measure taken by [the] plaintiff, intended and calculated to hasten the suit to judgment." Id. (quoting Augusta Sugar Co. v. Haley, 163 La. 814, 112 So. 731, 732 (1927)). The analysis we outlined in Gulf Appliance was an effort to construe the parameters of the term "affirmatively" that was employed in the statute by the Legislature when the statutory provision at issue was originally enacted.
Wilson, 923 So.2d at 365. In 1966, tracking the language of section 45.19(1), we added subsection (e) to rule 1.420, providing *791 in pertinent part that "[a]ll actions in which it does not affirmatively appear from some action taken by filing of pleadings, order of court or otherwise that the same is being prosecuted for a period of one year shall be deemed abated for want of prosecution and shall be dismissed." In re Fla. Rules of Civil Procedure, 187 So.2d 598, 624 (Fla.1966).[1]
Rule 1.420(e) was amended in 1968 to state, "All actions in which it affirmatively appears that no action has been taken by filing of pleadings, order of court or otherwise for a period of one year shall be dismissed...." In re Florida Rules of Civil Procedure, 211 So.2d 206, 207 (Fla. 1968). As we noted in Wilson, the term "affirmatively" was finally removed in its entirety from the rule when it was amended again in 1976. Under the 1976 amendment, the rule then stated, "All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court or otherwise has occurred for a period of one year shall be dismissed...." In re The Florida Bar, Rules of Civil Procedure, 339 So.2d 626, 629 (Fla.1976). The 1976 revision was, in part, a response to the "confusion surrounding the issue of the type of activity sufficient to `affirmatively' establish that action occurred sufficient to avoid dismissal under the rule." Wilson, 923 So.2d at 365.
Despite the 1976 amendment, which entirely removed any reference to affirmative record activity, the earlier Gulf Appliance analysis continued to influence the courts in applying rule 1.420(e), thereby creating confusion and difficulty in determining what type of record activity would preclude dismissal for failure to prosecute. See Wilson, 923 So.2d at 365-66. In order to rectify this situation, we held in Wilson that the Gulf Appliance analysis was inapplicable to the plain language of the rule, which no longer used the words "affirmatively appear ... that the same is being prosecuted," as section 45.19(1) required when we decided Gulf Appliance. Wilson, 923 So.2d at 366. We made clear that proper application of the 1976 rule would "ordinarily require only a cursory review of the record" to determine if there was record activity by the filing of pleadings, order of court, or otherwise. Wilson, 923 So.2d at 368.
In practice, under this plain meaning interpretation, any filing of record during the applicable time frame is sufficient to preclude dismissalwithout regard to a finding that the filing is intended to affirmatively move the case toward resolution on the merits. In creating this bright-line test in Wilson, we expressly receded from prior case law that applied the Gulf Appliance analysis to the 1976 version of the rule, so that trial courts would no longer be required to "look behind the face of the record to subjectively determine whether the activity reflected in the record is merely passive, and therefore insufficient to preclude dismissal under the rule, or active and thereby designed to hasten the suit to conclusion on the merits." Wilson, 923 So.2d at 369. We explained our plain meaning interpretation of rule 1.420(e) in Wilson as follows:
This construction of the rule establishes a bright-line test that will ordinarily require only a cursory review of the record by a trial court.... We find this bright-line rule appealing in that it establishes a rule that is easy to apply and relieves the trial court and litigants of the burden of determining and guessing as to whether an activity is merely passive *792 or active. It is this burden which has created the difficulty with which litigants and trial courts have struggled to determine whether a particular filing or action will advance the cause to resolution.
....
For the reasons stated herein, we now recede from our prior interpretations of rule 1.420(e) insofar as those interpretations require a trial court to look behind the face of the record to subjectively determine whether the activity reflected of record is merely passive, and therefore insufficient to preclude dismissal under the rule, or active and therefore designed to hasten the suit to a conclusion on the merits and therefore sufficient to preclude dismissal. Instead, we return to the plain meaning of the rule as specifically set forth in the words of the rule as discussed above.
Wilson, 923 So.2d at 368-69.
Our plain meaning interpretation of the rule in Wilson remains applicable to the current rule. Less than two months after issuance of our decision in Wilson, we amended rule 1.420(e) to shorten the twelve-month period of record inactivity stated in the rule to ten months in order to trigger the filing of a notice of lack of prosecution. See In re Amendments, 917 So.2d at 181-82. The amended rule then added a notice requirement followed by a sixty-day grace period during which the party could engage in record activity in order to avoid dismissal for lack of prosecution. The other provisions in the rule remained virtually the same. Id. at 181. Both rules require record activity, defined as the "filing of pleadings, order of court or otherwise." Under both rules, dismissal is precluded if a stay order is entered or a party shows good cause in writing more than five days before a hearing on the motion to dismiss.
Our intent in amending the rule in 2005 was simply to alleviate the harshness of the rule by providing notice to a party that the action was at risk of being dismissed for lack of prosecution, and affording the party a reasonable time thereafter in which to engage in record activity in order to preclude dismissal. By creation of the sixty-day grace period, it was not our intention to create a situation in which the plaintiff or the trial court must again guess at what type of record activity will be required during the sixty-day grace period to preclude dismissal for lack of prosecution. Just as we held in Wilson, the bright-line interpretation of rule 1.420(e), under which any filing of record is sufficient to preclude dismissal, applies to both time periods set forth in the amended rule.

CONCLUSION
Based on our analysis set forth above, we conclude that the record filing made by Chemrock during the sixty-day grace period provided by rule 1.420(e) met the requirement for record activity contained in the rule, thus precluding dismissal for lack of prosecution. Accordingly, we quash the decision of the First District in Chemrock Corporation v. Tampa Electric Co., 23 So.3d 759 (Fla. 1st DCA 2009), and approve the decisions in Pagan v. Facilicorp, Inc., 989 So.2d 21 (Fla. 2d DCA 2008), Padron v. Alonso, 970 So.2d 399 (Fla. 3d DCA 2007), and Edwards v. City of St. Petersburg, 961 So.2d 1048 (Fla. 2d DCA 2007), to the extent they are consistent with our holding. We remand for further proceedings consistent with this opinion.
It is so ordered.
CANADY, C.J., and LEWIS, POLSTON, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion.
QUINCE, J., dissents with an opinion.
*793 PARIENTE, J., concurring.
I concur in the majority's interpretation of our recently amended Florida Rule of Civil Procedure 1.420(e), entitled "Failure to Prosecute." Certainly the judicial branch has an interest in ensuring that all cases are handled in an efficient, effective, and fair manner. There is rarely any excuse for a case to be pending on the trial court's docket from 2002 through 2008 without the case either being disposed of or set for trialunless the case involves an issue such as a stay as a result of bankruptcy or is unusually complex. Neither obstructive behavior nor inaction by either side is an excuse for a case to be stalled in the judicial system. However, the enforcement of the rule is a balancing act. As we observed in Wilson in discussing the prior version of rule 1.420(e):
In adopting the rule, we were confronted with balancing two important but often competing policies and concerns in supervising the orderly and fair resolution of civil litigation: one, to see that legitimate disputes are fairly resolved in the courts on the merits, and the other, to identify cases that are not being properly prosecuted and whose presence in the system may hinder the courts in processing other cases on the merits. Those concerns remain with us.
Florida's Constitution provides that the courts will be open and accessible to our citizens to address all legitimate grievances. Art. I, § 21, Fla. Const. Hence, a primary concern of the courts is to see that cases are resolved on their merits. A secondary concern is to see that the resolution of cases on the merits is not impaired by the processing of cases without merit or cases that are filed and then abandoned in the system. It is this secondary concern that is addressed by rule 1.420(e).
Wilson v. Salamon, 923 So.2d 363, 367-68 (Fla.2005) (footnote omitted).
Of course, if the parties are in fact ready for trial, then the responsibility to ensure a trial date is shared by both the parties and the court. In this case, the action was filed in May 2002, and an amended complaint was filed on August 6, 2002. Less than three months later, on October 31, 2002, the trial court entered an order setting the case for trial on July 7, 2003. Then, based on a joint motion for continuance, the court granted a continuance and, according to the motion to dismiss, "continued the trial indefinitely."
Apparently, the case then languished. Each party casts blame upon the other. The plaintiff, Chemrock Corporation, stated that it had "been ready to proceed to trial and remains ready" and requested that a trial date be set. The plaintiff contended that the defendant, Tampa Electric, had "been dilatory in conducting discovery." The defendant subsequently claimed that there had been "no attempt on the part of Plaintiff to reschedule the trial."
Because the plaintiff allowed sixteen months to elapse from the time when it requested a trial date be set without taking action to ensure a trial date or filing a notice for trial as required by the rules, it is hard to believe that the plaintiff was anxious to get the case to trial. On the other hand, counsel is from out of state and may have not known that the proper way to ensure a trial date under the Florida rules is to file a notice pursuant to Florida Rule of Civil Procedure 1.440. That rule provides that once an action is at issue, "any party may file and serve a notice that the action is at issue and ready to be set for trial." Fla. R. Civ. P. 1.440(b). Once the party files a notice for trial, the "clerk shall then submit the notice and the case file to the court," id., and if "the court finds the action ready to be set for trial, it shall be set not less than 30 *794 days from the service of the notice for trial," Fla. R. Civ. P. 1.440(c).
Because we do not have a transcript of the hearing, it is impossible to determine why the trial judge did not just set the case for trial rather than dismissing the case. In fact, this dismissal would appear to be contrary to the spirit of our case law, which states that "[o]nce a plaintiff has given notice that it is ready for trial, the trial judge must enter an order fixing a date for trial and is therefore precluded from dismissing the action for lack of prosecution should the plaintiff fail to take any further action." Mikos v. Sarasota Cattle Co., 453 So.2d 402, 403 (Fla.1984), receded from in part by Fishe & Kleeman, Inc. v. Aquarius Condo. Ass'n, 524 So.2d 1012, 1012-13 (Fla.1988) (holding that "the bar against dismissal terminates after the trial court has taken action in response to the notice for trial"); see also Cabrera v. Pazos, Larrinaga & Taylor, P.A., 922 So.2d 422, 424 (Fla. 2d DCA 2006) ("[O]nce a party files a proper rule 1.440(b) notice that a matter is ready for trial, it is the court's duty to set the cause for trial.... Failure of the trial court to set the case for trial precludes dismissal for failure to prosecute despite the lack of record activity."); Howland Feed Mill, Inc. v. Hart, 774 So.2d 962 (Fla. 1st DCA 2001) (holding that the filing of a notice asserting that the case was at issue and ready for trial and asking the court to set the case for trial "precludes the rule 1.420(e) dismissal").
I agree with the majority's bright-line interpretation of the rule and again emphasize what I stated in my concurrence in Wilson, 923 So.2d at 369-70that ensuring the timely disposition of cases is a joint responsibility:
I conclude that increased attention to judicial case management and less emphasis on an arbitrary application of rule 1.420(e) better serves the administration of justice and the goal of deciding cases on the merits.
Rule 1.420(e) must be examined in conjunction with the other rules of court that are designed to ensure that cases progress in a timely manner. Florida Rule of Judicial Administration 2.085(b) requires trial judges to "take charge of all cases at an early stage in the litigation" and to "control the progress of the case thereafter until the case is determined." Florida Rule of Judicial Administration 2.085(e) provides guidance to both trial judges and the parties on when particular types of cases should be completed. In addition, Florida Rule of Civil Procedure 1.200(a) provides a tool for a judge to monitor the progress of cases by authorizing the judge to order a case management conference to determine a number of matters, including any "matters that may aid in the disposition of the action." Fla. R. Civ. P. 1.200(a)(10). This is similar to Federal Rule of Civil Procedure 16, which allows a court to set a pretrial conference to, among other things, "expedit[e] the disposition of the action," "establish[ ] early and continuing control so that the case will not be protracted because of lack of management," and "discourag[e] wasteful pretrial activities."
Since that concurrence was written, we now have a new rule of case management procedure for complex litigationFlorida Rule of Civil Procedure 1.201which should further the goal of ensuring that the trial court take an active role in the management of such cases and that a trial date be set in those cases within six to twenty-four months of the case management conference. See Fla. R. Civ. P. 1.201(b)(3).
Unfortunately, the significantly diminished resources available to the trial courts, including lost case managers and *795 the flood of mortgage foreclosure cases, have taxed our trial courts to the limit, making active case management more difficult in all cases. Regardless, the bottom line is that these problems cannot be solved by using rule 1.420(e) to dismiss cases where the litigants intend to continue to prosecute the case to a conclusion.
QUINCE, J., dissenting.
While the record filing by Chemrock seems to comply technically with rule 1.420(e), I cannot agree that the rule was intended to apply in this situation. This was the second time that it was brought to the trial court's attention that there had been no record activity in this case. On December 27, 2006, Tampa Electric filed a notice of lack of prosecution because there had been no record activity for ten months. During the 60-day period provided for under the rule, February 22, 2007, Chemrock filed a Motion in Opposition to Dismissal. While the motion acknowledged that there had been no record activity, it cited discovery disputes and other nonrecord activities as a basis to keep the case open.
The case remained open with no record activity after the February 2007 filing until June 24, 2008, when Tampa Electric filed a Motion to Dismiss saying there had been no record activity for the prior sixteen months. And on August 25, 2008, Chemrock filed an affidavit indicating why it believed there was good cause to deny the motion. Thus, even after being on notice in 2006 and 2007 concerning the failure to have record activity, Chemrock again did nothing for an extended period until Tampa Electric brought this fact to the attention of the trial court.
I do not believe that the rule was intended to give plaintiffs multiple opportunities to simply sit on a case. Therefore, I respectfully dissent from the majority's decision in this case.
NOTES
[1] Section 45.19 was repealed shortly after rule 1.420 was amended in 1966 to include subsection (e) providing for dismissal for lack of prosecution. See ch. 67-254, § 49 at 691, Laws of Fla.