66 So.3d 370 (2011)
WESTON TC LLLP, Appellant,
v.
CNDP MARKETING INC., a Florida corporation, and Helen C. Schur Parris, Appellees.
No. 4D10-1063.
District Court of Appeal of Florida, Fourth District.
July 27, 2011.
*371 Peter A. Mardinly, Weston, for appellant.
Michael S. Bendell of Michael Bendell, P.A., Boca Raton, for appellees.
GROSS, J.
We reverse an order of dismissal because there was sufficient record activity under Florida Rule of Civil Procedure 1.420(e) to avoid dismissal.
In February 2008, Weston TC LLLP filed suit against CNDP Marketing, Inc. and Helen C. Schur Parris for breach of a lease. The defendants answered and counterclaimed. Between February and October 2008, the parties engaged in discovery and other litigation activity. On December 31, 2008, the defendants moved for sanctions against the plaintiff.
No further file activity occurred until November 25, 2009, when the defendants filed a notice of lack of prosecution. In their notice, the defendants asserted Weston had not filed anything for ten months and stated they would seek a dismissal for lack of prosecution after one year of inactivity under Rule 1.420(e). On January 19, 2010, within the 60-day grace period provided by Rule 1.420(e), Weston filed a notice of the absence and unavailability of its attorney; the notice provided that it should be construed as "an application and request for continuance, extension of time and/or for [p]rotective [o]rder as appropriately required."
One week later, the defendants moved to dismiss for lack of prosecution. They argued that the notice of absence and unavailability was insufficient to avert a dismissal under the rule, citing Chemrock Corp. v. Tampa Electric Co., 23 So.3d 759 (Fla. 1st DCA 2009), rev'd., ___ So.3d ___, 2011 WL 2566394 (Fla.2011).
In response, Weston argued that its notice was sufficient record activity and contended that Chemrock was inconsistent with Wilson v. Salamon, 923 So.2d 363 (Fla.2005), and the district court opinions applying that case. In a supporting affidavit, Weston's attorney averred that he lived full-time in Pennsylvania in close proximity to his elderly mother. The attorney described in detail his mother's severely deteriorating health and how much of his time from June to November 2009 was spent taking care of her, eventually leading to his neglect of the case. When confronted with the defendants' notice of failure to prosecute, the attorney faxed a settlement offer to the defendants' attorney, which was good until December 31. The defendants did not respond. The attorney then attempted to assess the state of the contested discovery in order to file something of substance but ran out of time. After determining that the plain language of Rule 1.420(e) required only some record activity, the attorney filed the January 19 notice of absence.
At a hearing, the circuit court concluded that the January 19 notice of absence was insufficient record activity to comply with Rule 1.420(e) and dismissed the case for lack of prosecution.
We agree with Weston that there was sufficient record activity in this case for it to avoid dismissal under Rule 1.420(e). Whether there has been "record activity" within the meaning of Rule 1.420(e) is a question of law reviewed de novo, as it involves the construction of a *372 procedural rule. See Swait v. Swait, 958 So.2d 552, 553 (Fla. 4th DCA 2007).
The current version of Florida Rule of Civil Procedure 1.420(e) provides:
(e) Failure to Prosecute. In all actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 10 months, and no order staying the action has been issued nor stipulation for stay approved by the court, any interested person, whether a party to the action or not, the court, or the clerk of the court may serve notice to all parties that no such activity has occurred. If no such record activity has occurred within the 10 months immediately preceding the service of such notice, and no record activity occurs within the 60 days immediately following the service of such notice, and if no stay was issued or approved prior to the expiration of such 60-day period, the action shall be dismissed by the court on its own motion or on the motion of any interested person, whether a party to the action or not, after reasonable notice to the parties, unless a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending. Mere inaction for a period of less than 1 year shall not be sufficient cause for dismissal for failure to prosecute.
For many years, Florida courts drew a distinction between "active" and "passive" record activity, with only active activity being sufficient to avoid dismissal under Rule 1.420(e). See, e.g., Gulf Appliance Distribs. v. Long, 53 So.2d 706 (Fla.1951) (construing the statutory predecessor to Rule 1.420(e), which had different operative language than the rule). Courts struggled to apply the framework. Wilson v. Salamon, 864 So.2d 1122, 1123 (Fla. 2d DCA 2003) ("In the fifty years since Gulf Appliance was decided, the courts have never managed to establish a workable, predictable definition that distinguishes `passive' activity from `active' activity." (citations omitted)). After the second district in Wilson certified a question on the framework of the rule, the Supreme Court took the opportunity to recede from Gulf Appliance and announce a bright-line rule. See Wilson v. Salamon, 923 So.2d 363 (Fla.2005).
In Wilson, the circuit court had dismissed an action for failure to prosecute, and the district court reluctantly affirmed. Id. at 363-64. In the operative twelve-month period, one of plaintiff's out-of-state attorneys filed a motion to appear pro hac vice as co-counsel, which was granted by an order filed in the record. Id. at 364. There was no further activity in the record after that order until the defendants moved to dismiss. Id. In affirming the circuit court's dismissal of the action, the second district held the pro hac vice motion to be insufficient activity to preclude dismissal under Rule 1.420(e) and asked the Supreme Court, by way of certified question, whether the order granting the motion was itself sufficient record activity. Id.
The Supreme Court reviewed the history of Rule 1.420(e), which replaced the statute at issue in Gulf Appliance, and noted that the case law spawned by Gulf Appliance diverged from the rule's plain language, as amended by the Court. See id. at 364-67. The Court quoted with approval language from its earlier opinion in Metropolitan Dade County v. Hall, which indicated that to decide whether there was record activity under Rule 1.420(e) "requires only a review of the record. There is either activity on the face of the record or there is not." Id. at 366-67 (emphasis in Wilson removed) (quoting Metro. Dade Cnty. v. Hall, 784 *373 So.2d 1087, 1090 (Fla.2001)). Consistent with this statement in Hall, the Supreme Court abandoned the active/passive distinction and established a bright line rule:
[T]he language of the rule is clearif a review of the face of the record does not reflect any activity in the preceding year, the action shall be dismissed, unless a party shows good cause why the action should remain pending; however, if a review of the face of the record reveals activity by "filings of pleadings, order of court, or otherwise," an action should not be dismissed. See Hall, 784 So.2d at 1090. This construction of the rule establishes a bright-line test that will ordinarily require only a cursory review of the record by a trial court. As Justice Wells noted in Hall, there is either activity on the face of the record or there is not. Id. We find this brightline rule appealing in that it establishes a rule that is easy to apply and relieves the trial court and litigants of the burden of determining and guessing as to whether an activity is merely passive or active. It is this burden which has created the difficulty with which litigants and trial courts have struggled to determine whether a particular filing or action will advance the cause to resolution.
The subjective analysis that is currently being applied in that struggle has simply proven unworkable and has spurred an increase in non-merit-based litigation that has led us down a path we are no longer willing to follow.
Id. at 368. Applying the bright-line rule, the Court held that the filing of the motion for pro hac vice constituted record activity precluding dismissal. Id. at 369.
The version of Rule 1.420(e) at issue in Wilson is slightly different than the version in this case. There, the rule did not provide for notice and an opportunity to re-commence prosecution to avoid dismissal. The Supreme Court subsequently amended the rule to establish that procedure by breaking up the one-year period into a ten-month period, followed by notice, and a 60-day grace period, during which the plaintiff should act. See In re Amendments to The Fla. Rules of Civil Procedure (Two Year Cycle), 917 So.2d 176, 176, 181-82 (Fla.2005); Fla. R. Civ. P. 1.420, comm. note to 2005 amend. In all other respects, including the "record activity" language, the rule remains the same. Thus, the amendment to the rule did not alter the meaning of "record activity," and post-Wilson, pre-amendment cases are still good law on the rule's definition of "record activity."
After Wilson, every case construing Rule 1.420's record activity provision has done so broadly. Indeed, Judge Cope of the third district observed, "Wilson has uniformly been interpreted to mean that any document appearing in the record within one year prior to the filing of a motion to dismiss precludes the entry of dismissal for failure to prosecute." Diamond Drywall Sys., Inc. v. Mashan Contractors, Inc., 943 So.2d 267, 269 (Fla. 3d DCA 2006) (emphasis in original) (citations omitted) (holding that ex parte motions for a clerk's default counted as record activity even though they were meritless).[1]
*374 In three cases, the second and third districts have held that for the purpose of determining whether record activity has occurred, a filing during the rule's 60-day grace period is judged by the same standard that is applied to a filing occurring before the issuance of a notice of a lack of record activity; these cases thereby applied Wilson to the entire one-year period described in Rule 1.420(e). See Pagan v. Facilicorp, Inc., 989 So.2d 21 (Fla. 2d DCA 2008) (a motion to stay the proceedings); Padron v. Alonso, 970 So.2d 399 (Fla. 3d DCA 2007) ("at least one filing within sixty days of the notice of intent to dismiss for lack of prosecution," but not specifying what kind of filing); Edwards v. City of St. Petersburg, 961 So.2d 1048 (Fla. 2d DCA 2007) ("a motion for hearing and for witness attendance").
This court followed Edwards in Lingo Construction v. Pritts Inc., 990 So.2d 705 (Fla. 4th DCA 2008); we held that a motion to set a date for arbitration, filed on the fifty-ninth day after a notice of lack of prosecution was issued, was sufficient to avoid dismissal under Rule 1.420(e).
To avoid reversal, the defendants rely heavily on Chemrock Corp. v. Tampa Electric Co., as they did below. There, the first district focused on the 60-day grace period after the filing of a notice of failure to prosecute. The court held that a plaintiff's "motion in opposition" filed during the grace period was insufficient to avoid dismissal. 23 So.3d at 763. More broadly, the court held that "the Wilson definition of `record activity'" was "inapplicable to the sixty-day grace period following service of the notice" under Rule 1.420(e). Id. The Florida Supreme Court recently reversed the first district's decision, holding that the Wilson standard for record activity applied to the entire twelve month period. See Chemrock Corp. v. Tampa Elec. Co., ___ So.3d at ___ (Fla. June 30, 2011) ("Just as we held in Wilson, the bright-line interpretation of rule 1.420(e), under which any filing of record is sufficient to preclude dismissal, applies to both time periods set forth in the amended rule.").
Though the Supreme Court's decision in Chemrock compels reversal in this case, we write to make two points about the first district's analysis and explain the operation of Rule 1.420(e).
First, Chemrock failed to apply the plain language of the rule before looking to extrinsic sources. The Florida Rules of Civil Procedure "are construed in accordance with the principles of statutory construction," Saia Motor Freight Line, Inc. v. Reid, 930 So.2d 598, 599 (Fla.2006), so that an interpretation of the rules should give effect to the drafters' intent, which is determined primarily from a rule's language, see Larimore v. State, 2 *375 So.3d 101, 106 (Fla.2008). When a rule is clear and unambiguous, courts will not look behind the rule's plain language or resort to rules of construction to ascertain intent. See Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla.2005). For this reason, we disagree with Chemrock's reliance on the committee note to the 2005 amendment to Rule 1.420(e). See Chemrock, 23 So.3d at 761 (stating that the second and third district's application of the rule was "contrary to the Committee's intent and divests the Rule of all meaning"). Because the language of the rule is, with one exception, unambiguous, there is no need to turn first to a committee note as an aid to interpret the meaning of "record activity."
Second, and following from our first point of disagreement, the plain language of Rule 1.420(e) does not impose a heightened burden of record activity on a plaintiff during the sixty day grace period. The rule uses the same phrase"record activity"in describing what must be absent in the ten-month period and what is required in the grace period after a notice of no record activity. The 2005 amendment was designed to create a notice-and-opportunity requirementand nothing more. See generally Swait, 958 So.2d at 553 (Fla. 4th DCA 2007) (noting that the amendment "sets out a new procedural framework" but "does not change that the minimum period of inactivity ... is one year."); Philip J. Padovano, Civil Practice § 12:3 (2009 ed.) ("[T]he general purpose of the rule remains the same.").
Under the rule, a plaintiff faced with dismissal for failure to prosecute can do one of three things: (1) during the grace period, move for and obtain a stay; (2) during the grace period, file something; or (3) do nothing during the grace period but show good cause why the action should remain pending. As the Chemrock court implied, these options create an ambiguity, since the first and third options "giv[e] two examples of filings which may be made during the sixty-day period," "[n]either [of which] will automatically avoid dismissal." 23 So.3d at 762. To resolve this ambiguity, which would seemingly allow actions under options one and three to satisfy the record activity requirement, the court concluded that not every filing during the grace period would constitute sufficient record activity, thereby limiting Wilson to the ten-month period. Id. at 762-63. However, where possible, a court must give full effect to all rule provisions and construe related rule provisions in harmony with one another. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992).
Harmonizing these three options, we read the rule as having one option based on record activity and two others based on stays and showings of good cause, so that a motion for a stay and a showing of good cause are excluded from the rule's classification of "record activity." Indeed, if a motion for stay is made and a stay timely obtained, the stay would take the case out of Rule 1.420(e) and its one-year period altogether. See Padovano, Civil Practice § 12:3 & n. 21 ("An action may not be properly dismissed for lack of prosecution if it has been stayed or abated by a previous order of the court."). Likewise, a showing of good cause establishes why dismissal is not appropriate even though there has been no record activity under the rule. Accordingly, under the rule, motions for stay and showings of good cause are exceptions, and the proper scope of record activity is, therefore, anything that could be filed except for those two things.
The Chemrock approach to Rule 1.420(e) would have resurrected the legal quagmire that Wilson sought to eliminate by establishing a bright-line rule; filings during *376 the 60-day grace period would have been evaluated under the same active/passive framework that proved so difficult prior to Wilson.
Based on the foregoing, Weston's January 19 filing was sufficient to avoid dismissal under Rule 1.420(e).
Reversed.
POLEN, J., concurs.
DAMOORGIAN, J., concurs specially with opinion.
DAMOORGIAN, J., specially concurring.
Agree with the majority as I must, I question the very notion that the party against whom suit is brought has the responsibility to "wake up" the party who brought the claim. Cases that languish in our system of justice have an institutional cost. For example, case counts have long been a significant factor in structuring court budgets. The longer a case is pending the more it costs the taxpayers. The same is true for the party against whom suit is brought. There are often reporting requirements imposed on private and public entities concerning pending litigation which impacts investment in and funding of these organizations. I do not think our system of justice benefits from rules that enable cases to languish for ten months only to be resurrected by what is now defined as record activity.
NOTES
[1] See also Bakala v. Bakala, 58 So.3d 423 (Fla. 2d DCA 2011) (a suggestion of death and motion for substitution); Guerrero v. Miami-Dade Cnty., 994 So.2d 472 (Fla. 3d DCA 2008) (a timely response to a motion to dismiss for failure to prosecute); Norman v. Darville, 964 So.2d 864 (Fla. 2d DCA 2007) (a notice of change of address); London v. Baxter Healthcare Corp., 965 So.2d 307 (Fla. 3d DCA 2007) (a status report); Miami-Dade Cnty. v. Walker, 948 So.2d 68 (Fla. 3d DCA 2007) (a notice of change of firm name); Johnson v. Maroone Ford LLC, 944 So.2d 1059 (Fla. 4th DCA 2006) (a second request for production); Rubio v. Cuba, 933 So.2d 1292 (Fla. 4th DCA 2006) (a notice of deposition, even though the deposition was subsequently cancelled); Reddy v. Farkus, 933 So.2d 595 (Fla. 5th DCA 2006) (a notice of cancellation of a hearing on a summary judgment motion); Cisko v. Phoenix Med. Prods., Inc., 930 So.2d 853 (Fla. 2d DCA 2006) (an interrogatory); Walker v. McDonough, 929 So.2d 1127 (Fla. 4th DCA 2006) (two notices of change of address, one from each side, and defense counsel's notice of absence); Richards v. Sheriff of Palm Beach Cnty., 925 So.2d 1166 (Fla. 4th DCA 2006) (a motion by an attorney to withdraw and the order granting the motion); Hunnewell v. Palm Beach Cnty., 925 So.2d 468 (Fla. 4th DCA 2006) (an order denying a first motion to dismiss); Nie v. Beaux Gardens Assocs., Ltd., 923 So.2d 1200 (Fla. 3d DCA 2006) (a notice for pretrial conference and a notice for case management conference with a proposed stipulation for case management order); Comm'l Union Ins. Co. v. Marine Sales & Servs., Inc., 923 So.2d 535 (Fla. 4th DCA 2006) (a civil cover sheet); Frisbie v. Gardiner, 917 So.2d 403 (Fla. 4th DCA 2006) (a motion to withdraw as counsel and an order granting the motion); Lynch v. United Distribs., Inc., 915 So.2d 274 (Fla. 4th DCA 2005) (a notice of compliance with discovery).