KLINGENSMITH, J.,
dissenting.
I dissent from the majority’s opinion.
The record shows that in February 2013, State Farm Mutual Automobile Insurance Company submitted to the cpunty court a Notice of Filing Peer Review Report of Dr. Michael Mathesie, D.C. (the “February Notice”), indicating that State Farm intended to rely upon attached documents “for any purpose permitted pursuant to the Florida Rules of Civil Procedure and Florida Evidence Code.” State Farm attached to the February Notice an affidavit of Dr. Mathesie as well as a report he prepared based upon a medical records review.
In both his affidavit and report, Dr. Mathesie stated that the treatment provided by Figler Family Chiropractic, P.A. (the “Clinic”) was not reasonable, ■ necessary, or related to the accident, and noted that the Clinic’s own records referred to an accident date other than the one at issue. In addition to the affidavit and report, State Farm listed Dr. Mathesie as an expert witness on the parties’ joint pretrial stipulation and in its responses to expert witness interrogatories, and specifically identified him in the deposition taken of its adjuster. State Farm also relied on the doctor’s affidavit for its defense during the parties’ court-ordered arbitration.
On April 1, 2013, almost two months after State Farm filed the February Notice, the Clinic filed a motion for final summary judgment regarding the issue of reasonable, related, and necessary treatment. The hearing on the motion was set approximately forty-five days later. At that hearing held on May 13, the Clinic’s counsel told the court that State Farm had “not filed; anything in opposition” to its motion. State Farm’s counsel responded that it had previously filed Dr. Mathesie’s affidavit and report with the court before the Clinic filed its motion.
The trial judge then asked if State Farm had done a “notice of filing” under rule 1.610(c) or a “notice of intent to rely” for the hearing, and Stefte Farm’s counsel explained the contents of the February Notice. However, the court responded that the February Notice was “not good enough” under the rules:
THE COURT: Okay. I’m just going to read the rule into the record, since there’s a court reporter.
Rule 1.610 Subsection C says — and I’m reading from a sentence in it, because it’s a fairly long section — the adverse party shall identify by notice served, pursuant to-Rule 1[.]080, at least five days prior to the date of the hearing, or delivered no later than 5:00 p.m. two busineás days prior to the date of the hearing, any summary" judgment evidence oil which the adverse party relies.
And by failing to do that, The Court cannot consider the filing here today. .So it doesn’t appear that there’s any reason not to grant the motion.
After rejecting* both the affidavit and report on ■ that basis, the county court granted the. Clinic’s motion for summary judgment. State Farm appealed this decision to the circuit court, which ultimately affirmed without explanation.
The transcript reflects that the trial judge failed to properly, consider the final *976 sentence of the portion of rule 1.510(c) he read into the record. Rule 1.510(c) in pertinent part provides:
The motion shall state vrath particularity the grounds upon which it is based and the substantial matters of law to be argued and shall specifically identify any affidavits, answers to interrogatories, admissions, depositions, and other materials as would be admissible in evidence (“summary judgment evidence”) on which the movant relies. The movant shall serve the motion at least 20 days before .the time fixed for the hearing, and shall also serve at that time a copy of any summary judgment evidence on which the movant relies that has not already been filed with the court. The adverse party shall identify, by notice served pursuant to rule 1.080 at least 5 days prior to the day of the hearing, or delivered no later than 5:00 p.m. 2 business days prior to the day of the hearing, any summary judgment evidence on which the adverse party relies.
Fla. R. Civ. P. 1.510(c) (emphasis added),
“[W]e apply a de novo standard of.review when the construction of a procedural rule is at issue.” Chemrock Corp. v. Tampa Elec. Co., 71 So.3d 786, 790 (Fla.2011). Moreover, procedural rules are to be interpreted according to their plain meaning. See id. (interpreting Florida Rule of Civil Procedure 1.420 under its plain meaning); see also Wilson v. Salamon, 923 So.2d 363, 366-67 (Fla.2005) (same). In this case, the plain meaning is quite clear. According to the text, the rale requires only that any such notice under rule 1.510, if required, be served at least five days before the hearing date if served electronically, or two days before the hearing date if delivered.
According to the plain language of this rale as drafted by the Florida Supreme Court, it does not require service of a “notice” after service of a motion for summary judgment. In fact, nothing in the language of the rale prevents the adverse party’s “notice” from being effectively filed at any time so long as it is done before the summary judgment hearing and does not violate any of the timing provisions. Applying the rale to require the filing of a notice only after a summary judgment motion is filed effectively adds an additional requirement to the rule that does not exist in the plain text.
When an appellate court reviews a trial court’s entry of summary judgment, it “must consider all record evidence hi a light most favorable to the non-moving party. If material facts áre at issue and the slightest doubt exists, summary judgment must be reversed.” Aery v. Wallace Lincoln-Mercury, LLC, 118 So.3d 904, 910 (Fla. 4th DCA 2013) (quoting Mills v. State Farm Mut. Auto. Ins. Co., 27 So.3d 95, 96 (Fla. 1st DCA 2009)).
The February Notice indicates that State Farm filed Dr. Mathesie’s affidavit and report to challenge the Clinic’s evidence and for any other purpose permitted by the rales, which would include opposition to any future summary judgment motion. The affidavit and report were not only “record' evidence” in the case, but were also unquestionably brought to the attention of both the Clinic and the court before the summary judgment hearing. By refusing to consider this evidence when filed in the record along with a notice of filing expressly advising of the party’s intent to rely on such evidence for any purpose permitted by the rules, the trial court erred.
In addition to reviewing a trial court’s construction of a procedural rule de novo, Chemrock Corp., 71 So.3d at 790, we have also stated that:
The standard of review for a petition for writ of certiorari filed from á deci *977 sion of the circuit court rendered in its appellate capacity is whether the petitioner has’been denied due process, or whether the circuit court , departed from the essential requirements of law in such a way as to cause a miscarriage of justice.
Noimbie v. Harvey, 137 So.3d 606, 607 (Fla. 4th DCA 2014) (citing Haines City Cmty. Dev. v. Heggs, 668 So.2d 523, 530-31 (Fla.1995)).
Here, the lower courts’ misinterpretation and misapplication of rule 1.510 effectively denied State Farm procedural due process, and departed from the essential requirements of law in such a way as to cause a miscarriage of justice.
According to the Florida Supreme Court, rules of procedure “should be interpreted to further justice and not frustrate it.” Strax Rejuvenation & Aesthetics Inst., Inc. v. Shield, 49 So.3d 741, 743 (Fla.2010); see also Singletary v. State, 322 So.2d 551, 555 (Fla.1975) (“Procedural rules should be given a construction calculated to further justice, not to frustrate it.”). Unlike the interpretation and application of statutes enacted by the legislature, Florida courts have long adopted a policy of flexible interpretation and application of procedural rules. As the court has also stated:
[T]he rules of practice are for the purpose of aiding in the speedy determination of causes, while the courts are established for the higher purpose of the administration of justice; that, where the strict enforcement of the letter of the rules of practice tends, in the opinion of the trial judge, to prevent or jeopardizé the latter, the rules should yield to the higher purpose.
Demos v. Walker, 99 Fla. 302, 126 So. 305, 306 (1930).
The court has since reiterated this policy, stating that “[ajlthough there is no question that .;. ■ rules are no>t to be ignored to rectify counsels’ mistakes, if justice to all parties is not thereby denied, in special circumstances, special concessions should be made.” Ford v. Ford, 150 Fla. 717, 8 So.2d 495, 496 (1942) (excusing plaintiffs counsel’s failure to submit a written motion for continuance in accordance with the Common Law Rules). The majority seemingly intends to diverge from this principle.
Under the trial court’s narrow interprer tation of the rule, for example, a pleading that, is clearly intended to controvert a summary judgment motion .but which fails to contain the “magic words” from rule 1.510(c) would have no legal significance. Alternatively, a pleading titled as a “Notice of Intent to Rely” under rule 1.510, but filed one week before plaintiffs summary judgment motion, would be similarly invalid. With all due respect to my colleagues in the majority, applying the rule as the trial court did here serves no purpose other than to stand rule 1.510(c) on its head.
Obviously, the rule was intended to prevent one party from surprising the other by using previously unidentified evidence to support or defeat a summary judgment motion; in other words, the rule removes the potential for parties to resort to “gotcha” tactics. However, when an opposing party is undeniably aware of the existence of summary judgment evidence, and knows that it will be used to oppose a summary judgment motion, the element of surprise is eliminated and the spirit of the rule has' been met. Here, the Clinic knew from deposing the adjuster that State Farm wás going to rely on Dr. Mathesie’s testimony. There was no reason for it to think otherwise.
The majority.-accurately points out that the rule was intended to prevent surprise *978 and gamesmanship. However, the rule as interpreted by the majority does not eliminate the possibility of dishonest trial strategies. What my colleagues ignore in their opinion is the undisputed fact that in this case there was no surprise to the party moving for summary judgment. While it is true that the possibility for game-playing can exist under either the majority’s or the dissent’s interpretation of the rule, any fault therein lies in the text of the rule itself, which I have endeavored to faithfully apply as it was written. The majority’s suggestion that its interpretation of the rule will result in decreased gamesmanship is pure ipse dixit and wholly speculative. What is clearly evident, however, is that the majority’s interpretation creates an ir-rebuttable presumption that a movant for summary judgment under these circumstances has suffered prejudice when in fact it has not. Additionally, if the standard to be applied to technically non-compliant filings under rule 1.510 is the “good faith” of the parties, as the majority suggests in its footnote 2, then the court’s order should be reversed and remanded since no inquiry about good faith was ever made by the trial court.
In short, the majority has effectively approved . one demonstrable form of gamesmanship over the mere potential for others, while punishing the party who made full disclosure with no surprise to the opposition. It has permitted a party with full knowledge that evidence already in the court file would be used to oppose its motion for summary judgment to prevail on that motion, merely because the opposition did not effectuate a superfluous renoticing or reference to that evidence which is not expressly required by the rule. Such a draconian result does not achieve the “higher puipose of the administration of justice,” Demos, 126 So. at 306, and should not be sanctioned unless clear authority exists otherwise.
The majority’s interpretation effectively re-writes the text of the rule to add words and- meaning which are neither plain ñor present, and,fin doing so does nothing'to eliminate-the potential for sharp practice. Unfortunately, there are no decisions interpreting this portion of rule 1.510(c) that might provide clear guidance,on this issue. However, what decisions there are that do give guidance on rules interpretation are clear, and we should adhere to them. From my perspective, if the supreme court intended for rule 1.510 to be interpreted and applied in the manner adopted by the trial court and approved by the. majority in this case, whose decisions expressly ignore century-old instruction from the court advising liberal interpretation of the rules to prevent this type of disapproved “gotcha” tactic, then that body should expressly say so.