KLINGENSMITH, J.,
dissenting.
I do not share the majority’s view of rule 2.520(f) as applied to noncomplying e-filed pleadings, and therefore dissent. According to the majority, subsection (f) of rule 2.520 applies only to e-filed documents that do not comply with subsections (b)— (e). Absent from their opinion is any recognition whatsoever that subsection (f) unequivocally applies to excuse noncompliance with rule 2.520(a) as well.
Rule 2.520(a) provides that “[a]ll documents filed in any court shall be filed by electronic transmission in accordance with rule 2.525.” Fla. R. Jud. Admin. 2.520(a); Rule 2.520(f) contains a safe-harbor provision that states, in pertinent part, “[n]o clerk of court shall refuse to file any document because of noncompliance with this rule.” Fla. R. Jud. Admin. 2.520(f). By stating “this rule,” subsection (f) refers to the general e-filing requirement as set forth in the entirety of rule 2.520, including subsection (a), which incorporates rule 2.525. See id. Subsection (f) clearly applies without limitation or exception where there has been noncompliance with any provision of rule 2.520 — including subsection (a).
In Matte v. Caplan, 140 So.3d 686 (Fla. 4th DCA 2014), we outlined the proper method for interpreting rules of procedure. There, the appellant failed to serve a motion to dismiss in “accordance with Florida Rule of Judicial Administration 2.516.” Id. at 687. We held that strict compliance with the rules was required, and affirmed the trial court’s decision to deny a motion for fees. Id. at 690 (“[SJtrict compliance with [rule] 2.516 regarding e-mail service of pleadings is required before a court may assess attorney’s fees.”). Writing for the majority in applying the plain text of the rule, Judge Warner reasoned that such an interpretive process was required because “[l]itigants *1195 should not be left guessing at what a court will deem is ‘substantial compliance’ with the rules.” Id.
This framework is entirely consistent with Florida Supreme Court cases approving such an interpretation of procedural rules. See, e.g., Chemrock Corp. v. Tampa Elec. Co., 71 So.3d 786, 791-92 (Fla.2011) (applying Florida Rule of Civil Procedure 1.420(e) under its plain meaning).
Additionally, as I have previously noted in another dissent:
According to the Florida Supreme Court, rules of procedure “should be interpreted to further justice and not frustrate it.” Strax Rejuvenation & Aesthetics Inst., Inc. v. Shield, 49 So.3d 741, 743 (Fla.2010); see also Singletary v. State, 322 So.2d 551, 555 (Fla.1975) (“Procedural rules should be given a construction calculated to further justice, not to frustrate it.”). Unlike the interpretation and application of statute’s enacted by the legislature, Florida courts have long adopted a policy of flexible interpretation and application of procedural rules. As the court has also stated:
[T]he rules of practice are for the purpose of aiding in the speedy determination of causes, while the courts are established for the higher purpose of the administration of justice; that, where the strict enforcement of the letter of the rules of practice tends, in the opinion of the trial judge, to prevent or jeopardize the latter, the rules should yield to the higher purpose.
Demos v. Walker, 99 Fla. 302, 126 So. 305,306 (1930).
State Farm Mut. Auto. Ins. Co. v. Figler Family Chiropractic, P.A., 189 So.3d 970, 977 (Fla. 4th DCA 2016) (Klingensmith, J., dissenting).
Here, the Bank’s counsel submitted the two statements of claims at issue to the clerk of court slightly more than . one month after rule 2.520 came into effect. Based on these facts, and contrary to the clear edict of our supreme court, the majority’s interpretation of the rule does nothing to further justice, but only frustrates it.
Initially, I agree with the majority’s view that rule, 2.520(f) is not ambiguous. This lack of ambiguity means that no additional interpretive tools are necessary to give it force and effect. Yet to fully understand the application given to the rule under the majority’s definition of “plain meaning,” one must ignore some subsections, apply other subsections, double-back into other provisions of various rules (but only in part), and' then derive intent from silence.
The majority adopts the trial judge’s reasoning that applying the simple language of the rule “would mean that every single lawyer that flies a document on the last day [to timely file a document in hard copy,] when they have to know by being a member of the Florida Bar that it has to ■be [e-filed,] gets a free pass.” Whether this position will have a positive or negative impact on trial practice can be fairly debated,' but the plain language of the rule cannot.
In effect, the majority is rewriting rule 2.520 by judicially nullifying subsection (f). However, when the rule was amended in 2012 to contemplate e-filing, the Florida Supreme Court made the decision not to amend or remove subsection (f). There is no justification for us to do by judicial ukase what the court chose not to do under its inherent rulemaking authority when presented with the opportunity.
Underlying the majority’s reasoning is the assumption that-the court intended to do something different from what the *1196 plain, unambiguous- text indicates. If that were true, and I believe it is not, there were, numerous drafting options available.
For example, if the court had intended that noncompliance would mean only limited types of noncompliance, i.e., formatting, font sizes, spacing, paper size, etc., or intended rule 2.520(f) to apply only to documents failing to adhere to those technical requirements set forth in subsections (bile), the court could have easily said so. It did not.
Moreover, if the court did not want to provide a form of amnesty to a broader range of noncompliance even though the e-filing rules were new in 2012, subsection (f) Qf rule 2,520 could have been removed in its entirety. It was not.
As yet another option, the .court could have revised subsection (f) to read that “the clerk of court shall not file any document in noncompliance with this rule.” Had they done so, their intent regarding how to deal with e-filing, noncompliance would have been clear. .That never happened.
In short, the court has never indicated any intention .to eliminate or restrict the rule 2.520(f) safe-harbor provision, or to punish attorneys who fail to properly e-file documents by instructing the clerks to reject those filings. The fact that the court neither changed nor removed rule. 2.520(f) when it amended the rules for e-filing, despite having ample opportunity to do so, provides clear support for the conclusion that it never intended to render, noncom-pliant e-filings a legal nullity.
Instead, by retaining rule 2.520(f), the Florida Supreme Court gave clear' direction to the clerks of the state that they shall not “refuse to file any document because of noncompliance.” Fla. R. Jud. Admin. 2.520(f). This is precisely what the clerk did in this case, as the lawyer representing the Estate admitted during oral argument.
I reiterate that “[l]itigants should not be left guessing at what a court will deem is ‘substantial compliance’ with the rules.” Matte, 140 So.3d at 690. As such, it also follows that litigants should not be left to wonder whether the clerks of court will follow the majority’s, strained and reconstituted interpretation of rule 2.520(f), or whether they will appropriately follow a common-sense reading of the text to guide their filing practices. In my opinion, litigants and their attorneys should be able to rely on the fact that each county’s clerk of court will follow the simple and straights forward language of the rule, as written. The majority’s opinion fails to further that goal.